UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60309-CR-COHN

UNITED STATES

v.

JUDEL JEAN-CHARLES,

    Defendant.

_____/

## ORDER DENYING MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

**THIS CAUSE** is before the Court upon Defendant Judel Jean-Charles's Motion to Suppress Physical Evidence and Statements [DE 29] ("Motion").  The Court has considered the Motion, the Government's Response [DE 30], the testimony of Officer Joseph Calicchio and exhibits admitted at the evidentiary hearing on February 12, 2016.  The Court has heard argument from counsel and is otherwise advised in the premises.

### I.  FINDINGS OF FACT

The Court finds by a preponderance of the evidence the following facts:

1.    Joseph Calicchio is a City of Miramar Police Officer assigned to road patrol for the past 18 years.

2.    In July 2015, identity theft and fraud—specifically, "shoulder surfing"—were prevalent crimes in the City of Miramar.

3.    "Shoulder surfing" occurs when someone stands over another person at an ATM trying to obtain that person's PIN or other identification.

4.    On July 18, 2015, the police 911 dispatcher received a call at 3:55 p.m. from an anonymous individual advising that a gray Honda Fit with a paper tag kept

moving to different parking spots in the parking lot at the Wells Fargo Bank located at 6810 Miramar Parkway in Miramar.

5. Officer Calicchio was aware that the ATM at the Miramar Parkway Wells Fargo had been the subject of fraudulent withdrawals in the past.

6. The Caller further advised that he observed a black male in the car's passenger seat and that the car was parked with its tag turned towards the bushes.

7. The Caller stated that he did not observe a driver.

8. Officer Calicchio was dispatched as a signal 13, suspicious person, at 4:00 p.m. and arrived at Wells Fargo at 4:04 p.m.

9. This occurred on a Saturday and the bank closed at 4:00 p.m.

10. At this time, it was so hot outside that Officer Calicchio was sweating in his patrol car with the air conditioner on.

11. Upon arrival at the bank, Officer Calicchio located a gray (silver) Honda backed into a parking space with a rear paper tag facing the bushes bordering the parking lot.

12. Although Officer Calicchio did not see the rear of the vehicle prior to encountering Defendant, the Honda did in fact bear a paper tag, and the model, Fit, was affixed to the rear hatched door.

13. It was reasonable for Officer Calicchio to conclude that the gray (silver) Honda backed into the parking spot in the Wells Fargo parking lot was in fact the vehicle referred to by the anonymous caller.

14. Officer Calicchio parked his marked police vehicle two to three feet to the side of the Honda.

15. Sufficient room was left for the Honda to easily exit its parking spot. Its path was not impeded.

16. The police vehicle's lights and siren were not activated.

17. Officer Calicchio observed a black male (later identified as Defendant) walking towards the Honda.

18. Defendant was wearing a gray hooded sweatshirt, black shorts, and black sunglasses.

19. Officer Calicchio was sure that on a secondary radio channel he heard that there was suspicious activity with a person at the ATM going back and forth to a vehicle.

20. As Defendant went to the driver's door of the Honda, Officer Calicchio approached the front of the Honda and asked Defendant if it was his car.

21. Defendant responded yes.

22. Officer Calicchio then explained that he was there to investigate a suspicious activity call involving a Honda changing spaces.

23. The tone of Officer Calicchio's voice was casual and conversational.

24. As Officer Calicchio explained his reason for being there, Defendant started to walk towards the rear of the Honda.

25. Toward the rear quarter of the Honda on the driver's side, Officer Calicchio saw Defendant drop a couple of objects on the ground.

26. The objects appeared to be credit or debit cards.

27. As Defendant reached down to reclaim the objects, Officer Calicchio asked Defendant what he dropped and Defendant replied his debit cards.

28. Officer Calicchio observed a good size bulge in Defendant's left pants pocket.

29. Officer Calicchio asked Defendant to take his hands out of his pockets.

30. As Defendant took his right hand out of his pocket, two cards and what appeared to be a black key fob where observed by Officer Calicchio.

31. At that time, Defendant was acting strange and nervous.

32. Officer Calicchio then asked Defendant for identification.

33. Defendant responded by saying that he was scared and then he darted and took off running.

34. Officer Calicchio and other officers were able to trace Defendant's path of flight.

35. Along that path a blue-silver visa debit card was recovered.

36. From the time Officer Calicchio asked Defendant if the Honda was his car to the point Defendant fled the scene was no more than a minute.

37. Officer Calicchio was summoned to the Wells Fargo Bank parking lot to investigate a potential crime.

38. At the time Defendant was asked to remove his hands from his pockets and to produce identification, Officer Calicchio had a reasonable suspicion of illegal activity.

39. Defendant at all times had reasonable means of exit both in his vehicle and on foot in that there was space between the hedge.

40. Prior to Defendant's arrest, Officer Calicchio never unholstered his firearm, activated his lights or siren, raised his voice, or otherwise exhibited force.

    41.    Officer Calicchio receives about three fraud-related calls a day.

    42.    Officer Calicchio investigated this suspicious activity call in the least intrusive manner and did not direct Defendant to remove his hands from his pockets or ask Defendant for identification until Officer Calicchio had a reasonable suspicion of criminal activity.

## II.  DISCUSSION

Defendant seeks to suppress evidence seized from him during the course of his encounter with Officer Calicchio. Specifically, Defendant argues that the Court should suppress seized credit cards, identification, and money, as well as the statements Defendant made during the encounter. As grounds, Defendant asserts that Officer Calicchio violated Defendant's Fourth Amendment rights by stopping him without reasonable suspicion that he had committed a crime. [DE 29 at 1.] The Court will deny the Defendant's Motion.

### A.  Standard

The Fourth Amendment limits the circumstances in which police may stop and search a person. "[L]aw enforcement officers may seize a suspect for a brief, investigatory . . . stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Jordan, 655 F.3d 1181, 1186 (11th Cir. 2011) (quoting Terry v. Ohio, 392 U.S. 1 19–20 (1968)). An officer's reasonable suspicion must be based upon "specific articulable facts," and rational inferences therefrom. United States v. Bautista-Silva, 567 F.3d 1266, 1272 (11th Cir. 2009).

The "reasonable suspicion" required to conduct an investigatory stop is not a high hurdle. Although it must be more than a hunch, "the likelihood of criminal activity need not rise to the level of probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. 266, 274 (2002). In evaluating an officer's actions, the Court does not consider each observation in isolation but instead looks to the totality of the circumstances. United States v. Lopez-Garcia, 535 F.3d 1306 (11th Cir. 2009). "[R]easonable suspicion may exist even if each fact alone is susceptible of innocent explanation." Bautista-Silva, 567 F.3d at 1272 (quotation marks omitted).

Further, not every encounter between a police officer and citizen amounts to a Fourth Amendment seizure. See United States v. Perez, 443 F.3d 772, 778 (11th Cir. 2006). "The mere fact that a law enforcement officer approaches an individual and so identifies himself, without more, does not result in a seizure." United States v. Baker, 290 F.2d 1276, 1278 (11th Cir. 2002). Additionally, "the simple act of police questioning does not constitute a seizure." Perez, 443 F.3d at 778. These "casual encounters" are not covered by the Fourth Amendment, and an officer may engage in them even without reasonable suspicion of any wrongdoing.

In distinguishing between a consensual encounter and an investigatory stop, the Eleventh Circuit has enumerated several factors for the trial courts to consider:

> Whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence, the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.

6

Perez, 443 F.3d at 778 (quoting Craig v. Singletary, 127 F.3d 1030, 1041 (11th Cir. 1997)).

### B.  Analysis

Here, Officer Calicchio and Defendant's interaction began as a consensual encounter.  It did not mature into an investigative stop until Officer Calicchio instructed Defendant to take his hands out of his pockets and produce identification.  By that time, Officer Calicchio had the required reasonable suspicion to perform the stop.

Officer Calicchio's interaction with Defendant began when Defendant approached his vehicle—the gray or silver Honda Fit.  Officer Calicchio had parked next to this vehicle.  Importantly, the Court finds that Officer Calicchio did not park his patrol car "in front of Charles'[s] Honda thereby blocking it," as Defendant contends. [DE 29 at 6.]  When Officer Calicchio observed Defendant approaching the Honda and spoke to Defendant, he did it alone.  He did not raise his voice, did not brandish his weapon, and did not touch Defendant.  He engaged in a consensual encounter that need not be justified by any reasonable suspicion of criminal activity.

This encounter did not mature into a seizure subject to Fourth Amendment limitations until Officer Calicchio directed Defendant to remove his hands from his pockets and produce identification.  By this time, Officer Calicchio had sufficient reason to suspect Defendant might be engaged in criminal activity sufficient to justify the stop. Officer Calicchio knew that fraudulent withdrawals had previously been made upon the Miramar Parkway Wells Fargo ATM.  He also observed that Defendant was at the bank slightly outside of business hours, and that Defendant was wearing a hooded sweatshirt inappropriate for the Florida summer heat. Defendant also wore sunglasses, which

while consistent with ordinary behavior would also be expected of someone who sought to conceal his identity from observers and ATM cameras.  He had also parked his car in such in a way that obscured its license plate.  Finally, Officer Calicchio observed a bulge in defendant's pocket that could have been a weapon.  These facts justified a request for Defendant to remove his hands from his pockets and produce identification.

  **C.**  **The Anonymous Tip**

Officer Calicchio arrived at the Miramar Parkway Wells Fargo in response to an anonymous tip.  As stated above, Officer Calicchio's observations at the Wells Fargo justified his decision to stop Defendant and direct him remove his hands from his pockets and produce identification, regardless of the anonymous tip.  Moreover, Defendant made no argument that Officer Calicchio could not rely upon the anonymous tip in his Motion. Nevertheless, the Court examines this issue and concludes that the anonymous tip would further contribute to the reasonableness of the stop.

An anonymous tip, "standing alone, would not warrant a man of reasonable caution in the belief that [a stop] was appropriate." Alabama v. White, 493 U.S. 325, 329 (1990) (quotation marks omitted). For an anonymous tip to reasonably support an officer's suspicion of criminal activity, it must be accompanied by sufficient indicia of the tip's reliability. Florida v. J.L., 529 U.S. 266, 270 (2000).  In the past, the Supreme Court had suggested that only an anonymous tipster's ability to "predict [a defendant's] *future behavior*" could sufficiently indicate his or her reliability. White, 493 U.S. at 332 (emphasis in original).  Such predictions, the Court concluded, "demonstrate[] inside information—a special familiarity with [a defendant's] affairs." Id.

The Supreme Court has since backed away from this approach.  In <u>Navarette v. California</u>, 134 S. Ct. 1683 (2014), the Supreme Court held that a detailed, contemporaneous report of suspicious activity to a 911 emergency dispatcher carries with it sufficient indicia of reliability when the details and location of the described events turn out to be correct.  <u>Id.</u> at 1689–90.  In <u>Navarette</u>, a 911 caller stated that she had been run off the road by a Ford F-150 pickup truck and gave the dispatcher the truck's license plate number.  Officers confirmed the truck's location and plate number as the caller described, and the Supreme Court held the anonymous tip sufficiently reliable.  <u>Id.</u> Here, an anonymous tipster called 911 and reported an occupant of a gray Honda Fit with a paper dealer tag behaving suspiciously.  Officer Calicchio confirmed the presence and description of the vehicle and Defendant.  He additionally knew that the Miramar Wells Fargo's ATM has frequently been the subject of fraud.

Under the Supreme Court's <u>Navarette</u> decision, these observations provide sufficient indicia of reliability concerning the anonymous tip.  And this tip would further support to the reasonableness of Officer Calicchio's suspicion that Defendant was engaged in criminal activity justifying his decision to direct Defendant to remove his hands from his pockets and produce identification.

### III.  Conclusion

In light of the foregoing, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Suppress Physical Evidence and Statements [DE 29] is **DENIED**.

**DONE AND ORDERED**, at Fort Lauderdale, Broward County, Florida, this 3rd day of March, 2016.

JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF